| | | |
|---|---|---|
| BETHLEHEM ENTERPRISE, INC., and PARVATI CORP., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 06 C 1772 |
| THE CITY OF OAK FOREST, an Illinois municipal corporation, THE CITY OF OAK FOREST PLANNING AND ZONING COMMISSION, JAMES STUEWE, MARTIN KALNINS, PAUL KIRCHDOERFER, HANK KUSPA, LUANNE BLATCHFORD, CHARLES WOLF, DAVID EDBORG, WAYNE SCHROEDER, MICHAEL FORBES, STEVE JONES, ADAM DOTSON and DAVID NEWQUIST, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Amy St. Eve  Mag. Maria Valdez |
| Defendants. | ) ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## COUNT I FOR ADMINISTRATIVE REVIEW

Plaintiffs, Bethlehem Enterprise, Inc. and Parvati Corp. (collectively, "Plaintiffs"), by and through their counsel, respectfully submit this Brief in Support of Count I for Administrative Review, and state as follows:

### Summary

On July 1, 2005, Bethlehem Enterprise, Inc. ("Bethlehem") entered into a contract to acquire a 60-room hotel property for $4.5 million from Parvati Corp. ("Parvati"). The contract was contingent upon Bethlehem "obtaining necessary approval from the City of Oak Forest to operate its business." On October 6, 2005, Bethlehem submitted an application to the City of Oak Forest ("City") for a commercial business license to operate an extended stay hotel.

Even though there would be no change in use under Bethlehem's ownership of the hotel, the City denied Bethlehem a business license to operate the extended stay hotel, erroneously concluding that (a) the City's Zoning Ordinance "contains no definition for an *extended stay* hotel; (b) Bethlehem's proposed use is "equivalent to a multi-family or apartment land use"; and (c) Bethlehem's "proposed extended stay hotel would be replacing one nonconforming use (hotel) with another nonconforming use (apartment), and this is specifically prohibited under Section 17.50.020F of the Zoning Ordinance."

On December 20, 2005, Plaintiffs appealed the denial of Bethlehem's business license to the City's Planning and Zoning Commission ("PZC"). The PZC affirmed the denial of the business license on February 1, 2006. On March 7, 2006, Plaintiffs timely filed this claim for administrative review with the Circuit Court of Cook County. *See* 735 ILCS 5/3-103.

## Standard of Review

On a claim for administrative review, the hearing and determination extends to all questions of law and fact presented by the entire record before the court. 735 ILCS 5/3-110 (2006).[1] An agency's findings of fact should be examined to determine whether they are against the manifest weight of the evidence – in other words, whether the opposite conclusion is clearly evident. *City of Belvidere v. Illinois State Labor Relations Bd.,* 181 Ill.2d 191, 205, 692 N.E.2d 295, 302 (1998). But this standard does not apply where the question involved is one of law. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill.2d 141, 148, 688 N.E.2d 90, 93-4 (1997). An agency's findings on questions of law are not binding on the courts and are reviewed *de novo*. *City of Belvidere,* 692 N.E.2d at 302.

---

[1] The City filed the administrative record with the Court on January 8, 2007.

The interpretation of a statute or ordinance is a question of law, necessitating *de novo* review. *Hawthorne v. Village of Olympia Fields*, 204 Ill.2d 243, 254-55, 790 N.E.2d 832, 840 (2003); *Bridgestone/Firestone, Inc.*, 688 N.E.2d at 93 (1997); *Victory Auto Wreckers, Inc. v. Village of Bensenville*, 358 Ill. App. 3d 505, 507, 832 N.E.2d 506, 508 (2nd Dist. 2005) (giving no deference to, and reviewing *de novo*, Village's interpretation of zoning terms). Courts apply a "clearly erroneous" standard to those cases that involve mixed questions of law and fact – i.e., the legal effect of a given set of facts. *City of Belvidere*, 692 N.E.2d at 302; *Victory Auto Wreckers, Inc.*, 832 N.E.2d at 508-09 (subjecting agency's interpretation of zoning ordinance to *de novo* review and then determining whether agency's application of the ordinance to the facts was clearly erroneous).

## **Factual Background**

On February 29, 2000, the City approved Parvati's site plan for construction of the 60-room Ramada Inn by a unanimous 6-0 vote. (Admin. Record, Ex. 1 at 27-8) (hereinafter "R-1 at 27-8.") At that time, the Ramada Inn was situated in the City's "M Limited Manufacturing District" (the "M District"). (R-1 at 26-7.) The M District specifically allowed the following as a permitted use: "Highway oriented commercial/retail uses, as determined by the Planning and Zoning Commission are also permitted in the M District, subject to approval of a site plan[.] (R-8.) Thus, the hotel was a legally permitted use in the M District. (R-1 at 26-7, 31.)

On February 15, 2004, Bethlehem entered into a contract to acquire the hotel property from Parvati Corp. for approximately $4.1 million. (R-3F at Ex. B.)

On August 11, 2004, the City Council approved Ordinance No. 2836, which divided the City's former M District into two separate manufacturing districts – the M-1 Light Industrial Zoning District (Section 17.34.020) and M-2 Heavy Industrial Zoning District. (R-3D.) By

virtue of Ordinance 2836, the City placed the hotel property in the M-2 District and the hotel became a legal nonconforming use. (R-3K at ¶ 2; R-1 at 31.) Since the enactment of Ordinance 2836, Parvati has continued to operate the hotel as a legal nonconforming use. (R-1 at 31; R-3K at ¶ 2.)

The hotel property is a two story, rectangular shaped structure with 60 guest rooms and 65 exterior parking spaces. (R-1 at 33-4.) The property has a main lobby area, an office, front desk room, meeting room, dining room and housekeeping room. (R-11 at 6.) The hotel's indoor swimming pool is no longer in use. (R-1 at 34.)

Guest rooms at the hotel are accessed by an interior corridor. (R-1 at 33.) Each guest room is rectangular in shape, 26 feet by 12 feet in size. (*Id.* at 34.) Each guest room has a private bathroom with sink and a closet. (*Id.*) None of the guest rooms have fully equipped kitchens. (*Id.* at 34, 37.) The only equipment in the guest rooms include a coffee maker, television, iron and ironing board. (*Id.* at 34.) Room rates include cable television, telephone, housekeeping and a continental breakfast. (*Id.* at 33.) Parvati offers guests of the hotel a continental breakfast. (*Id.* at 33.)

The existing hotel has accommodated guests for varying lengths of stay, including stays of several months to over three years. (R-1 at 33, 36, 46.) In sum, the hotel, like many others in the area, allows guests to stay as long as they pay. (*Id.* at 33, 36, 42.)

On July 1, 2005, Bethlehem entered into a new contract with Parvati to acquire the hotel for $4.5 million, which included certain furniture, fixtures and equipment, unlike the original contract. (R-11 at 6.) The new contract was contingent upon Bethlehem obtaining any necessary approval from the City to operate its business. (R-11 at 4, ¶ 8.)

On or about October 6, 2005, Bethlehem submitted an application to the City for a commercial business license to operate an extended stay hotel at the property. (Supp. R-16.)[2] Bethlehem's application identified the name of the proposed business as "Bethlehem Terrace Hotel Extended Stay." (*Id.*)

On November 3, 2005, the City's Community Development Department ("CDD") requested additional information in support of Bethlehem's application for a business license. (R-3L.) Bethlehem responded to each of the questions posed by the CDD in a letter dated November 11, 2005. (R-3M.) In the letter, Bethlehem confirmed that the extended stay hotel "would provide customary hotel services that are normally provided in a hotel and/or extended stay hotel[]" and that Bethlehem would fully comply with all city ordinances related to its operation. (*Id.* at ¶ 1.) Bethlehem also confirmed that it intended to continue offering its guests daily, weekly and monthly rates, and that Bethlehem would continue to pay applicable hospitality taxes in accordance with state law. (*Id.* at ¶¶ 5-6.) Essentially, Bethlehem would continue to offer lodging, service (including housekeeping) and meals to its guests, just like the existing hotel. (R-1 at 35; R-3J at 28.)

Bethlehem's use of the hotel would not require any structural alteration to the exterior or interior of the hotel. (R-1 at 34; R-4, Abel Opinion. at 2.) In fact, only cosmetic changes would be made, such as repainting the guest rooms and interior common areas. (R-1 at 34.)

Under Bethlehem's ownership, the number of guest rooms (60) and parking spaces (65) would remain the same. (R-1 at 34; R-3J at 29.) As with the existing hotel, none of the guest rooms would have complete kitchen facilities that are permanently installed. (R-1 at 41; R-4,

---

[2]      Plaintiffs have filed a motion to supplement the administrative record to include a copy of the commercial business license application submitted by Bethlehem to the City.

Abel Op. at 2.) None of the guest rooms would have a stove or range. (R-3J at 26.) Rather, the guest rooms would only have a microwave and refrigerator. (*Id.*) Moreover, just like the current hotel, no food would be prepared or cooked in any guest rooms or anywhere at the extended stay hotel. (*Id.* at 25, 28.) Meals would be brought in from an outside food service. (*Id.* at 28.)

On November 21, 2005, City Administrator Steve Jones denied Bethlehem a commercial business license to operate the extended stay hotel, concluding that (a) the City's Zoning Ordinance "contains no definition for an *extended stay* hotel; (b) Bethlehem's proposed extended stay hotel is "equivalent to a multi-family or apartment land use"; and (c) Bethlehem's "proposed extended stay hotel would be replacing one nonconforming use (hotel) with another nonconforming use (apartment), and this is specifically prohibited under Section 17.50.020F of the Zoning Ordinance." (R-3N at 2.)

On December 20, 2005, Plaintiffs filed a timely appeal of the City Administrator's denial of the business license with the PZC. (R-2.) The PZC affirmed the denial of Bethlehem's business license on February 1, 2006. (R-1 at 70.)

## ARGUMENT

I.  **Bethlehem's Proposed Use Is Not A "Multi-Family" or "Apartment" Use Under The 1999 Zoning Ordinance.**

Under Illinois law, a legal non-conforming use of land is the continuation of a lawful use existing at the time of adoption of an ordinance though not in conformity with the new ordinance. *See City of Marengo v. Pollack*, 335 Ill. App. 3d 981, 986, 782 N.E.2d 913, 917 (2nd Dist. 2002). The right to a non-conforming use under a zoning ordinance is a property right. *Brown v. Gerhardt*, 5 Ill.2d 106, 110, 125 N.E.2d 53, 56 (1955). Purchasers of nonconforming property are entitled to the same rights as the seller. *Schneider v. Bd. of Appeals of City of*

*Ottawa*, 402 Ill. 536, 547, 84 N.E.2d 428, 434 (1949). The City concedes that the existing hotel is a legal nonconforming use. (R-1 at 31.)

The City erroneously concluded, however, that Bethlehem's proposed use of the hotel property would be "equivalent to a multi-family or apartment land use" under the City's Zoning Ordinance. (R-3N at 2.) Based on this, the City concluded that Bethlehem's proposed use would result in a change from one nonconforming use (hotel) to another non-conforming use (apartment). (*Id.*) The City's interpretation of the Zoning Ordinance, and its application of the facts to the Zoning Ordinance, was clearly erroneous.

The City's Zoning Ordinance defines the term "apartment" as follows: "'Apartment' means a room or suite of rooms used as a *dwelling* for one family *which does its cooking therein*." (R-15 at § 17.02.030) (emphasis supplied).

In similar fashion, the City's Zoning Ordinance defines the term "Dwelling/Dwelling Unit" as follows: "'Dwelling/Dwelling Unit' means one or more rooms which are arranged, designed or used as living quarters for no more than one family. Individual bathrooms and *complete kitchen facilities that are permanently installed* to serve the family *shall be required to be part of each dwelling unit*." (R-15 at § 17.02.030) (emphasis supplied).

Finally, the City's Zoning Ordinance defines "Multifamily Dwelling" as follows: "Dwelling, Multifamily. 'Multifamily dwelling' means two or more *dwelling units*, including modular units, attached along and sharing one or more common walls between any two units and/or stacked one above another." (R-15 at § 17.02.030) (emphasis supplied).

Based on the clear language of these definitions, all "dwellings," including "multifamily dwellings," must contain "complete kitchen facilities that are permanently installed." Likewise, because all "apartments" are dwellings, they too must have "complete kitchen facilities that are

permanently installed" so as to allow a family to "do[] its cooking therein."

Plaintiffs presented unequivocal and unrefuted evidence that the guest rooms would not have "complete kitchen facilities that are permanently installed" in any of the guest rooms. As with the current hotel use, no stoves would be present in any guest room and and no cooking or food preparation of any kind would be performed anywhere in the hotel. Nothing would change in the hotel in terms of cooking or food preparation, and no evidence to the contrary was offered to the PZC. Thus, the City erroneously concluded that Bethlehem's proposed extended stay hotel would be "equivalent to a multi-family or apartment land use" under the City's Zoning Ordinance.

## II.    The City's Zoning Ordinance Permits Hotels to Offer Extended Stay Services.

The City also concluded that "[t]he City Zoning Ordinance contains no definition for an *extended stay* hotel." (R-3N at 2.) This interpretation of the 1999 Zoning Ordinance is clearly erroneous. The City's Zoning Ordinance defines motels and hotels as follows:

> "*Motel/hotel*" means one or more structures on a lot which are designed to provide temporary sleeping accommodations for transients and having off-street parking. *Motel/hotel* rooms may include accommodations which offer suites, limited in-room kitchen and bar facilities and similar temporary arrangements. *Motels are not considered to provide semipermanent or extended stay services like apartments.* However, *motels* may provide transient living facilities for such groups as construction workers and temporary employees. *Motels/hotels* may also include facilities such as restaurants, coffee shops, gift shops and other incidental commercial activities.

(R-15 at § 17.02.030) (emphasis supplied.)

The definition for "motel/hotel" utilizes the phrase "motel/hotel" in three parts of the definition, but only uses the word "motel" (and not hotel) in two other parts of the definition. In the third sentence, the definition only uses the word "motel" and states: "*Motels* are not

considered to provide semipermanent or extended stay services like apartments." (R-15 at §

17.02.030) (emphasis supplied.) Although the word "hotel" is used in other parts of the

definition, the City did not include the word "hotel" in the third sentence which prohibits only

"motels" from providing "semipermanent" or "extended stay services." If the City intended to

prohibit both "motels" and "hotels" from providing "semipermanent or extended stay services" it

would have used the combined terminology "motel/hotel" as the City did in three other parts of

the definition. But the City did not do so. It only barred "motels" from providing such services.

Several rules of statutory construction support the conclusion that extended stay hotels

are permitted under the City's definition of "motel/hotel." First, in construing an ordinance,

courts apply the same principles of construction as are involved in construing a statute. *Victory

Auto Wreckers, Inc.*, 832 N.E.2d at 509; *City of Marengo*, 782 N.E.2d at 917; 1A N. Singer,

Statutes and Statutory Construction, § 30:6 at 699 (2002).[3] The cardinal rule of statutory

construction is to ascertain and give effect to the intent of the legislature. *Lulay v. Lulay*, 193

Ill.2d 455, 467, 739 N.E.2d 521, 527 (2000); *City of Marengo*, 782 N.E.2d at 917. The best

evidence of this intent is the language of the ordinance, which must be given its plain and

ordinary meaning. *Lulay*, 739 N.E.2d at 527. The statute should be evaluated as a whole, with

each provision construed in connection with every other section. *Id.*

"It is an elementary rule of construction that effect must be given, if possible, to every

word, clause and sentence of a statute." 2A N. Singer, § 46:06 at 181 (citations omitted); *see

also, Morris v. Broadview*, 385 Ill. 228, 231, 52 N.E.2d 769, 770 (1944). "While every word of

a statute must be presumed to have been used for a purpose, it is also the case that every word

---

[3]     Per this Court's Standing Order, the applicable sections of the Statutes and
Statutory Construction treatise are attached to this brief.

excluded from a statute must be presumed to have been excluded for a purpose." 2A N. Singer, § 46:06 at 192.

"[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." 2A N. Singer, § 46:06 at 194; *see also, Carver v. Bond*, 146 Ill.2d 347, 353, 586 N.E.2d 1273, 1276 (1992). "In like manner, where the legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." 2A N. Singer, § 46:06 at 194.

The maxim of statutory interpretation "expressio unius est exclusio alterius" also supports Plaintiffs' interpretation of the definition of "motel/hotel." "This rule of statutory construction . . . is based on logic and common sense. It expresses the learning of common experience that when people say one thing they do not mean something else." *Bridgestone/Firestone, Inc.*, 688 N.E.2d at 95; *see also*, 2A N. Singer, § 47:24 at 319-20 (citations omitted). "The maxim emphasizes the language of the statute and inferences to be drawn from the way it is written. There is generally an inference that omissions are intentional." 2A N. Singer, § 47:25 at 326-27; *see also, Welch v. Johnson*, 147 Ill.2d 40, 52, 588 N.E.2d 1119, 1124 (1992) (the express mention of one thing in a statute excludes all other things not mentioned); *Baker v. Miller*, 159 Ill.2d 249, 261, 636 N.E.2d 551, 556 (1994) ("Although no statute may be construed more broadly than its express language and reasonable implications, that which is implied in a statute is as much a part of it as that which is expressed.") (internal citations omitted).

If the City intended to prohibit "hotels" as well as "motels" from providing "semipermanent" or "extended stay services," it would have included the word "hotel" in the third sentence which only bars "motels" from providing semipermanent or extended stay

services. No reasonable construction of the definition of "motel/hotel" suggests that hotels may not offer semipermanent or extended stay services. Likewise, it is wholly improper to include the term "hotel" in a sentence where it was specifically excluded. Logic and common sense dictate that the City intentionally omitted the word "hotel" in the third sentence because the City did not intend to prohibit "hotels" from providing "semipermanent" or "extended stay services."

Likewise, nothing in the City's 1999 Zoning Ordinance imposes any limit on the number of days that a guest may stay at a hotel (or a motel for that matter). The City's use of the phrase "temporary sleeping accommodations" in the definition of "motel/hotel" is not inconsistent with hotels offering "semipermanent" or "extended stay" services.

Plaintiffs also presented unrefuted evidence that Bethlehem intended to make the extended stay hotel available to guests on a daily basis, as well as on a weekly and monthly basis. (R-3M at ¶ 5.) Thus, the extended stay hotel would also "provide temporary sleeping accommodations for transients," as required under the definition of "motel/hotel."

The Zoning Ordinance also draws a clear distinction between the type of kitchen facilities allowed in hotels as opposed to dwellings. Under the City's definition of "motel/hotel," both types of properties *may* include "accommodations which offer . . . limited in-room kitchen and bar facilities[.]" Bethlehem's proposed use strictly complies with this definition because only a microwave and small refrigerator will be available in guest rooms of the proposed extended stay hotel. This stands in stark contrast to the City's definition of "Dwelling/Dwelling Unit" which *requires* "complete kitchen facilities" to be "permanently installed" in each dwelling unit.

For all of these reasons, the City's conclusion that extended stay hotels are not defined in the Zoning Ordinance is clearly erroneous. Moreover, the City erroneously concluded that

Bethlehem's proposed extended stay hotel would be "equivalent to a multi-family or apartment land use" rather than a "hotel."

**III.    Bethlehem's Proposed Use Is A Continuation Of A Legal Nonconforming Use And Would Not Violate Section 17.50.020 of the City Zoning Ordinance Governing Nonconforming Uses.**

The City erroneously concluded that Bethlehem's proposed use would result in a change from one nonconforming use (hotel) to another non-conforming use (apartment) in violation of Section 17.50.020F of the 1999 Zoning Ordinance.  (R-3N at 2.)  As discussed above, Bethlehem's proposed use of the hotel would not change the nature of the hotel use previously authorized by the City.

Notably, the City did not conclude that Bethlehem's proposed use violated any other subsection of Section 17.50.020 of the 1999 Zoning Ordinance.  Under Section 17.50.020, legal nonconforming uses may be continued unless one of the provisions of Section 17.50.020 (subsections A through J) is triggered.  Specifically, Section 17.50.020 provides: "Any building, structure or use which existed lawfully at the time of the adoption of this zoning code, and which . . . becomes nonconforming upon the adoption of . . . any subsequent amendment thereto, may be continued only in accordance with the following regulations[.]" (R-15 at § 17.50.020.)  From there, Section 17.50.020 enumerates subsections A through J which, if triggered, would prevent a legal nonconforming use from continuing.

Subsection A deals with "Repairs and Alterations" and allows "[o]rdinary repair and alteration . . . to a nonconforming building or structure, provided that no ***structural alteration*** is made in or to such building or structure[.]" (R-15 at § 17.50.020(A)) (emphasis supplied.)  The phrase "structural alternation" is defined in the 1999 Zoning Code as follows:

"Structural alteration" means any change in the supporting members of a building, such as bearing walls, columns, beams or girders, or any substantial change in the roof or in the exterior walls, excepting such repair or replacement as may be required for the safety of the building. The addition or installation of siding or masonry veneer to a building, the enclosure of the open area below a roof projection, the enclosure of a doorway, the enclosure of an open stairway, the enclosure of a roofed patio or roofed carport, shall not be considered structural alterations.

(R-15 at § 17.02.030.)

Bethlehem's proposed extended stay hotel only contemplated cosmetic changes, such as painting, and would not require any "structural alterations" as defined in the Zoning Ordinance. Even Bethlehem's plan to fill the indoor swimming pool (which Parvati already had closed) and carpet the area for use as additional dining space for its guests would not constitute a "structural alteration" because it would not involve "any change in the supporting members of a building, such as bearing walls, columns, beams or girders, or any substantial change in the roof or in the exterior walls." (R-1 at 34; R-4, Abel Op. at 2.) Regardless, there is no requirement in the Zoning Ordinance that hotels operate swimming pools, and the City never claimed that filling the swimming pool and carpeting the area would constitute a "structural alteration" under the Zoning Ordinance, nor could it.

Subsection B deals with "Additions and Enlargements" and generally provides that a "nonconforming building or structure shall not be added to or enlarged in any manner[.]" (R-15 at § 17.50.020(B).) Again, Bethlehem's proposed extended stay hotel did not call for any additions or enlargements to the footprint of the hotel property.

Subsections C, D and E of Section 17.50.020 address "Moving" nonconforming buildings or structures, the "Restoration of Damaged Nonconforming Buildings or Structures," and the "Discontinuance of Use," respectively. Bethlehem's proposed use did not involve

moving any part of the hotel property to another location nor did it require the restoration of any damaged sections of the building by virtue of any fire, casualty or Act of God. Likewise, Parvati's use of the subject property as a hotel has never ceased, and thus, there has been no "Discontinuation of Use."

Subsection G of Section 17.50.020 governs the "Elimination" of nonconforming uses, but specifically provides that buildings and structures lawfully established and located in a Manufacturing District (such as the subject hotel property) "shall not be subject to the amortization provisions of this section." Thus, subsection G is not triggered either.

Subsection H of Section 17.50.020 deals with the nonconforming use "of part or all of a conforming building or structure[.]" The hotel is not a conforming building or structure, and therefore, subsection H does not come into play to prohibit Bethlehem's proposed use. Likewise, subsections I and J address the nonconforming use of "land not involving a building or structure." Since the subject property is a hotel (e.g., a building) and not only vacant land, subsections I and J are not applicable.

**Conclusion**

For all of these reasons, Plaintiffs pray for entry of judgment in their favor and against the Defendants on Count I and further pray for entry of an order (1) finding that Bethlehem's proposed extended stay hotel would be a continuation of an existing legal nonconforming use, (2) reversing the final decision of the PZC which denied a commercial business license to Bethlehem, (3) directing the City of Oak Forest to grant Bethlehem a commercial business license to operate the extended stay hotel, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

BETHLEHEM ENTERPRISE, INC.
and PARVATI CORP.

By: /s/ Antonio DeBlasio

Antonio DeBlasio
Andrew Y. Acker
KUBIESA, SPIROFF, GOSSELAR & ACKER, P.C.
533 W. North Avenue, Ste. 204
Elmhurst, Illinois 60126
Tel. (630) 516-1800
Fax (630) 516-1808
deblasio@ksgalaw.com

## <u>Certificate of Service</u>

The undersigned, an attorney, hereby certifies that he caused a true and correct copy of the foregoing **Plaintiffs' Brief in Support of Count I for Administrative Review** to be served electronically to all attorneys of record via ECF on March 12, 2007, and via First Class U.S. mail, postage prepared, by depositing the same in the U.S. mail chute located in Elmhurst, Illinois on said date.


<u>/s/ Antonio DeBlasio</u>